# In re contested election of Martz.

1. Under the special Act of March 20th, 1862 (P. L., 142), which repealed by implication the Act of February 26th, 1853, each district of the township of Hempfield is entitled to have one supervisor, who is to be elected, however, by the qualified voters of the whole township.

2. Where all the essential provisions of a special Act of Assembly are supplied by a later Act, the former will be deemed to have been repealed by implication, although there be no repealing clause.

October 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Quarter Sessions of *Westmoreland county :* Of October and November Term 1885, No. 106.

This was a petition presented to said court by A. B. Long,

*et al.*, electors of the New Stanton district in the Township of Hempfield, contesting the election of Charles Martz, as a supervisor in Hempfield township.

The petition set forth the following facts: At an election held at the public school house in Hempfield township on February 17th, 1885, the petitioners voted, *inter alia*, for a person to fill the office of supervisor of the New Stanton election district in accordance with the provisions of an Act of Assembly of February 26th, 1853, and also in accordance with the provisions of an Act of March 20th, 1862. By the return sheets, filed with the Clerk of the Quarter Session, it appeared that Josiah Long received ninety-one votes for the office of supervisor of said district and that Charles Martz received eighty-five votes. The judges and inspectors of that district accordingly issued a certificate to Josiah Long.

The said Josiah Long, within one month after his election, before entering upon the discharge of his duty as supervisor of said district, appeared before the township auditors of Hempfield township, at Greensburg, and offered to give bond, with approved security, to the said auditors, in double the amount of the tax that would probably come into his hands, and said auditors refused to accept said bond or any bond from said Long, on the ground that said Long had not been elected to the office of supervisor as aforesaid, but accepted a bond from the said Charles Martz, and vested in him all the authority necessary to the supervisor of said district, and by so doing they fraudulently deprived said Long of the office of supervisor in said district and prevented him from entering upon the duties and receiving the emoluments thereof, thereby rendering the result of said election in New Stanton district null and void, which action on the part of said auditors was undue and illegal.

The petition prayed for a decree, commanding that the bond given by said Martz be revoked, his appointment be made null and void, and that Josiah Long be declared supervisor of said district.

The first section of the Act of February 26th, 1853, mentioned in the above petition, provided "that the citizens of that portion of Hempfield township, in the county of Westmoreland, composing the New Stanton election district, be and are hereby authorized to elect one supervisor; the citizens of that portion of said township composing the Adamsburg election district shall elect one supervisor, and the citizens of the residue of said township shall elect two supervisors, etc." By the second section all laws incompatible with the above were repealed.

The Act of March 20th, 1862, "authorizing the qualified

voters of Hempfield township to elect two additional supervisors," provided by section one, "that hereafter the qualified voters of Hempfield township, in the county of Westmoreland, shall, at the time and in the manner provided by law, elect six supervisors of roads in the said township instead of four, with the same powers, duties and responsibilities provided by existing laws."

The second section provided, "that the said supervisors first elected under the provision of this Act shall divide the township into six separate districts, and that each district, in all susbequent elections for supervisors, shall be entitled to have one elected therein, and that each supervisor so elected shall be paid his compensation for his services by the district in which he resides."

Counsel for Charles Martz, moved to quash the above petition for the following reasons: (1) The petition contains no statement of facts which would render the said election or the returns thereof undue, illegal or void. (2) It is not averred, charged or claimed in said petition that there was anything undue or illegal in said election, or that the returns thereof were not correct. (3) It is not set forth in said petition that Charles Martz, the respondent, was elected legally or illegally as a supervisor for said district, or as one of the supervisors of Hempfield township, at said election. On the same day, Martz's counsel filed an answer to the said petition, without prejudice to the above motion to quash. The said answer admitted the facts set forth in the petition but declared, that, while it is true that he only received eighty-five (85) votes for supervisor in said New Stanton election district, he received many other votes for said office in the other election districts of said Hempfield township, to wit: in the Adamsburg and Hempfield election districts, and that he received a majority of all the votes for said office in said township, as appears by the returns thereof filed in this court, and which are made a part hereof, and that he received a certificate of election from the return judges of said districts for said office, which is in the following words, to wit: "We, the subscribers, judge and inspectors of an election held at the Hempfield township in the limits of Westmoreland county on the 17th day of February, A. D. 1885, do certify that you, having received 454 votes, are therefore elected to the office of supervisor for said Stanton district," and that he had been duly qualified according to law for said office. Respondent prayed that the court dismiss the bill.

The court, HUNTER P. J., denied the motion to quash and appointed an examiner, John Armstrong, Esq., to take testimony and report the facts whether or not New Stanton election

district has been allowed one of the six supervisors provided for by the Act of Assembly, 20th of March, 1862, and if so, how such supervisor has hitherto been elected. The examiner took testimony and reported the following facts:

"First, that the New Stanton election district has been allowed to elect one supervisor in said district for the last thirty-five or forty years.

Second. That the Act of 1862 made no change in this respect, and the said New Stanton district is now a supervision district by itself, and is allowed to elect one of the six supervisors allowed to be elected in Hempfield township.

Third. That the said supervisor in the said New Stanton district is elected by the voters residing within said district. From these facts it follows that the New Stanton election district is allowed to elect one of the six supervisors authorized to be elected in Hempfield township, and that said supervisor is elected by the voters residing within the limits of the said New Stanton election district.

Respondent filed exceptions to all the examiner's findings of fact and to his conclusion that the New Stanton election district was allowed to elect one of the supervisors.

The court dismissed these exceptions and entered a decree that Josiah Long was duly elected supervisor of New Stanton district, that Charles Martz deliver up to him all the books and papers belonging to the office of supervisor and further ordering the township auditors to receive and approve of the bond of Josiah Long. The respondent then took this writ of certiorari, assigning for error the refusal of the court to quash the petition, the confirmation of the examiner's report, and the entering of the above decree.

*Alexander Eicher* and *Lucien W. Doty*, for appellant.— There was no irregularity or unfairness alleged or proven so far as the election was concerned, and hence there could be no petition under the Act of 1874.

The complainant has already had what he asks for, he holds a certificate of his election in the New Stanton district. The facts of his petition, if proven, would not change the result, and hence the court should have dismissed it: Boileau's Case, 2 Parsons, 505; Battis *v.* Price, 2 Pears., 459.

Under the legislation relating to the election of supervisors in Hempfield township, the New Stanton district has no right to elect one supervisor.

Prior to 1853, the elections of supervisors was regulated by the general Act of April 15th, 1834, and but two were elected in Hempfield township.

On February 26th, 1853, a local Act of Assembly was

passed which made a radical change in the road law of said township. It created three road districts out of a township in which but one had before existed. Each supervisor was to serve "for that portion of said township for which he has been respectively elected."

This was the legal status of. affairs, whether so acted upon by the supervisors or not, at the time of the passage of the special Act of March 20th, 1862. (P. L., 142.) This Act provided that hereafter *the qualified voters* of Hempfield township shall elect six supervisors. Moreover there is no express repealing clause in this Act, and if it could be so construed in connection with the Act of 1853 that both Acts should stand as part of the road law of Hempfield township, it would be the duty of the courts to do so. But we apprehend this cannot be done, because the Acts are essentially repugnant, and being so, the former Act must be considered repealed by implication.

At the end of the first section of the Act of 1862, we find that the six supervisors mentioned in this Act are invested "with the same powers, duties and responsibilities provided by existing laws." As this Act, by clear implication, repeals the Act of 1853 the words just quoted must be understood as referring to the general road laws and not to the abrogated Act of 1853.

*John F. Wentling* (*E. E. Robbins* with him), for appellees.— The petition of the contestant sets forth that he received a majority of six votes in New Stanton district; yet he is fraudulently deprived of his office; that the township election officers made an undue, illegal and fraudulent return of said election, and thereby rendered the same null and void. This clearly raises a proper case for a contested election under the Act of 1874: Com'th *v.* Leech, 8 Wr., 334; Com'th *v.* Baxter, 11 Casey, 263; Barber's Case, 5 Nor., 399. The title to the Act of 1862, gives the key to its meaning, "An Act authorizing the qualified voters of Hempfield township, to elect two additional supervisors." It provides that hereafter the qualified voters shall at the time and in the manner provided by law, elect six supervisors instead of four. The four supervisors here referred to are provided by the Act of 1853, and not by the general law, which only provides two; hence it only increases the number. The manner of the election is left indefinite; this the Act of 1853 explains as follows: That the citizens of New Stanton election district be and are hereby authorized to elect one supervisor, and so for each of the others.

The Acts are harmonious and there is no repealing clause in the Act of 1862. A repeal could only arise by implication and when the Acts can be construed so as to give effect to

each, the courts will not declare a repeal: Brown *v.* Commissioners, 9 Har., 43; Improvement Co. *v.* Com'th, 9 W. N. C., 74; Osborne *v.* Everitt, 7 Out., 422.

Mr. Justice STERRETT delivered the opinion of the court, October 19th, 1885.

The main question in this case is, whether the electors of Hempfield township, at large, or only the electors of that portion of the township embraced in the New Stanton district, were entitled to vote for a supervisor to represent that district? If the latter only were entitled to vote, it must be conceded that Josiah Long, in whose favor the decree below was entered, was duly elected, because he received the highest number of votes cast in the New Stanton district for candidates resident therein; but, if the electors of the entire township had a right to vote for all the supervisors to be elected therein, it is equally clear that plaintiff in error, having received the highest number of votes cast in the township for candidates resident in the New Stanton district, was duly elected supervisor in and for that district. The solution of this cardinal question depends on the interpretation of the special Acts regulating the election of supervisors in Hempfield township, and especially on the construction that is given to the Act of March 20th, 1862. The first section of that Act provides, "that hereafter the qualified electors of Hempfield township. . . . . shall, at the time and in the manner provided by law, elect six supervisors of roads in said township instead, of four with the same powers, duties and responsibilities provided by existing laws." The second section provides that the six supervisors, first elected under the Act, "shall divide the township into six separate districts, and that each district, in all subsequent elections for supervisors, shall be entitled to have one elected therein, and that each supervisor so elected shall be paid this compensation for his services by the district in which he resides."

Prior to the passage of the Act of 1862, two supervisors for Hempfield township were, at first, elected under the general law relating to election of township officers, etc. Afterwards, successive changes were effected by the Acts of March 14th, 1845, March 7th, 1846 and February 26th, 1853. By the latter Act, the qualified voters of that portion of Hempfield township, composing the New Stanton election district, and the qualified voters of that portion of the township composing the Adamsburg district were each "authorized to elect one supervisor," and the qualified voters of the residue of said township were authorized to elect two supervisors, one of whom was required to reside north and the other south of the turnpike.

Thus matters stood when the above quoted Act of 1862 was passed. The question is, what was its effect on the previous special legislation? Did it supply the Act of 1853, and therefore repeal it by implication; or, are the two Acts *in pari materia* and not so inconsistent that both may not stand? As we have seen, the Act of 1862 provides, in the first place, for the election of six supervisors by the qualified voters of the township at large, at first election after its passage. In the next place it makes it the duty of the six supervisors thus first elected to divide the township into six districts, neither of which is required to correspond with either of the old districts; and, in the third place, each of said new districts is entitled to have elected therein one supervisor. As we understand it, the Act does not mean that each district is entitled to elect its own supervisor, but to have him elected by the qualified voters of the whole township. The provisions of the Act are incompatible with the continued existence of the old districts as they existed under the Act of 1853, as well as with the former mode of electing supervisors to represent them respectively. The Act of 1853 being thus supplied, as to all its essential provisions, by the Act of 1862, was superseded and by necessary implication repealed.

There was no error in refusing to quash the petition. It was sufficient both in form and substance; but, for reasons suggested above, as well as others that might be added, the learned judge erred in holding that the qualified voters of the New Stanton district alone had a right to elect one supervisor resident therein, and in entering the decree complained of.

> Decree reversed and petition dismissed at the costs of the petitioners.